UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHILADELPHIA INDEMNITY INSURANCE
CO.,

                Plaintiff,

     - against -

INTREPID GROUP, LLC, THE CITY OF NEW
YORK, and STEVEN CARDONA,

              Defendants.

16-cv-7928 (JGK)

MEMORANDUM OPINION &
ORDER

JOHN G. KOELTL, District Judge:

The plaintiff, Philadelphia Indemnity Insurance Co., brings this action against Intrepid Group, LLC, the City of New York, and Steven Cardona, seeking a judgment declaring that Philadelphia is not obligated to defend or indemnify Intrepid or the City in a lawsuit Cardona brought against Intrepid, the City, and others in New York State court. Philadelphia argues that Cardona's suit alleges injuries resulting from sexual assault, and that coverage for such claims is specifically excluded in the insurance policy that covers Intrepid and the City. Intrepid has filed a counterclaim seeking a declaration that Philadelphia is obligated to defend and indemnify Intrepid pursuant to the insurance policy.

Presently before the Court are (1) the City's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Dkt. No. 67; (2) Philadelphia's motion for summary

judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, Dkt. No. 61; (3) Intrepid's cross-motion for summary judgment pursuant to Rule 56(a), Dkt. No. 82; and (4) the City's request that the Court grant summary judgment in its favor as a non-movant pursuant to Rule 56(f)(1) of the Federal Rules of Civil Procedure.

The pending motions boil down to one dispositive issue: Whether Philadelphia complied with New York Insurance Law § 3420(d)(2), which requires insurers to disclaim coverage under an exclusion to an insurance policy as quickly as reasonably possible. As explained further below, Philadelphia's unexplained delay of at least fifteen months between the date it learned of the grounds to disclaim coverage under the insurance policy and the date it actually disclaimed coverage is unreasonable as a matter of law. Therefore, Intrepid's cross-motion for summary judgment pursuant to Rule 56(a) and the City's request for summary judgment pursuant to Rule 56(f)(1) are **granted**; Philadelphia's motion for summary judgment is **denied**; and the City's motion to dismiss is **dismissed as moot**.

## I.

The following facts are undisputed unless otherwise noted.

## A.

The dispute in this case arises from Insurance Policy No. PHPK379853 (the "Insurance Policy"), which Philadelphia issued

2

to Aguila, Inc., as the named insured. Aguila operates and manages the Fulton Family Residence ("Fulton"), a public homeless shelter. The Insurance Policy provides Commercial General Liability insurance coverage for Fulton for the period of July 1, 2012, to July 1, 2013. Dkt. No. 62, at 3; Dkt. No. 66 ¶ 1, 2; see Dkt. Nos. 63-1, 63-4.[1]

The Commercial General Liability part of the Insurance Policy contains an Abuse or Molestation Exclusion. Under this Exclusion, the Commercial General Liability coverage does not extend to any liability arising from "actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured" or any liability arising from the negligent employment, investigation, or supervision "of a person for whom any insured is or ever was legally responsible and" who engaged in such conduct. Dkt. No. 66 ¶ 11.

The Insurance Policy also contains a Sexual or Physical Abuse or Molestation Vicarious Liability Coverage Form (the "SPAM Coverage Form"). This Form states limited situations in which Philadelphia will provide coverage for injuries resulting from sexual abuse or molestation notwithstanding the Abuse or Molestation Exclusion. Dkt. No. 66 ¶ 8; Dkt. No. 72-1, at 7-8.

---

[1] For ease of reference, the Court cites the documents relevant to the pending motions by docket number rather than title.

The City and Intrepid are Additional Insureds for purposes of the Commercial General Liability part of the Insurance Policy. Dkt. No. 66 ¶¶ 3-4, 12. The parties dispute whether the City and Intrepid qualify as Additional Insureds for purposes of the SPAM Coverage Form. Dkt. No. 66 ¶¶ 9-10; Dkt. No. 71 ¶ 9; Dkt. No. 91 ¶ 8.

**B.**

On June 21, 2013, Steven Cardona filed a Notice of Claim against the City alleging that an employee of Fulton had sexually assaulted Cardona, who was a minor residing at Fulton at the time of the alleged assault. Dkt. No. 83-17, at 1, 3. The Notice of Claim sought "money damages for personal injuries, pain and suffering, medical experiences and related damages" from the City for its alleged negligence, recklessness, and carelessness in hiring and overseeing the employee who allegedly committed the sexual assault. Id.

The City tendered Cardona's Notice of Claim to Philadelphia, seeking indemnification and defense pursuant to the Insurance Policy. See Dkt. No. 72-1, at 1.

On October 7, 2013, Philadelphia sent a letter to the City titled "DENIAL OF COVERAGE," in which Philadelphia acknowledged receipt of the City's tender and informed the City that it would neither defend nor indemnify the City for the Notice of Claim. Id. at 1, 2. Philadelphia asserted that the City is an

Additional Insured only under the Commercial General Liability part -- not under the SPAM Coverage Form. Id. at 2, 4, 8. Because Cardona alleged injuries arising from sexual abuse or molestation by a person while in the care custody or control of the City, Philadelphia concluded that Cardona's allegations fit within the Abuse or Molestation Exclusion, and thus the City was not entitled to coverage on the Notice of Claim. Id. at 2.

On November 7, 2013, Cardona filed a lawsuit by verified complaint in New York State court against the City, Aguila, and two other entities -- Housing Solutions USA, Inc., and 1625-1631 Fulton Ave. Owner LLC. Dkt. No. 63-4; see Dkt. No. 66 ¶ 13. Cardona alleged in the lawsuit that he was assaulted by a Fulton employee, and that the City and others are liable for the injuries arising from the assault by virtue of their negligent, reckless, and careless "ownership, operation[,] management, maintenance and control" of Fulton. Dkt. No. 63-4 ¶¶ 27-29, 32-34, 37-39, 42-44; see Dkt. No. 66 ¶ 14. Cardona's complaint did not specify that the assault that caused his injuries was sexual in nature. Dkt. No. 66 ¶ 15.

On December 20, 2013, the City tendered Cardona's complaint to Philadelphia and requested insurance coverage. Dkt. No. 63-5; see Dkt. No. 66 ¶ 16.

On March 24, 2014, Philadelphia sent a letter to the City titled "RESERVATION OF RIGHTS/PARTIAL DISCLAIMER," in which

Philadelphia acknowledged receipt of the City's tender of Cardona's complaint and advised the City of Philadelphia's coverage position. Dkt. No. 63-6, at 1; see Dkt. No. 66 ¶ 17. In this letter, Philadelphia reproduced the portion of the Insurance Policy that made the City an Additional Insured and stated:

> Based on this endorsement, the City qualifies for Additional Insured status under the [Commercial General Liability] Part of the [Insurance Policy] only.

Dkt. No. 63-6, at 3. Philadelphia then reproduced the Abuse or Molestation Exclusion and stated:

> [Cardona] alleges that the City failed to investigate, supervise and train its purported employee, Jorge Hernandez ("Hernandez") and that he was assaulted by Hernandez. The Notice of Claim filed as a condition precedent to the commencement of this suit contains express allegations that [Cardona] was "sexually assaulted." Accordingly, [Philadelphia] reserves its rights to disclaim coverage to the City for these allegations under the Abuse or Molestation [E]xclusion.

Id. at 4. Philadelphia also reproduced the SPAM Coverage Form and stated:

> The City is not an [A]dditional [I]nsured under the SPAM Coverage Form of the [Insurance Policy]. Accordingly, [Philadelphia] disclaims coverage to the City under the SPAM Coverage Form.
>
> [Philadelphia] will provide the City with a defense under the [Commercial General Liability] Part of the [Insurance Policy] only. [Philadelphia] will assign counsel to

6

> defend the City. Without waiving any of its
> rights or defense under the [Insurance
> Policy], [Philadelphia] hereby assigns
> Kaufman Dolowich & Voluck, LLP to defend the
> City in the Cardona action on a going
> forward basis only.
>
> By agreeing to be defended by counsel
> appointed by [Philadelphia], the City
> consents to the assignment of counsel by
> [Philadelphia] and acknowledges that neither
> [Philadelphia] nor any related company
> waives or intends to waive any defense to
> coverage under the policy.
>
> [Philadelphia] reserves the right to
> assert other terms, conditions, and
> provisions of the policy, and to amend and
> supplement this letter with respect to the
> captioned lawsuit at any time in the future.
> None of the acts of [Philadelphia's] agents,
> attorneys or employees are to be construed
> as a waiver or operate as an estoppel with
> respect to any of [Philadelphia's] rights
> under the [Insurance Policy].

Id. at 8–9; see Dkt. No. 66 ¶¶ 17–18.

The City later retained independent counsel with
Philadelphia's consent and at Philadelphia's expense. Dkt. No.
66 ¶ 18.

On June 12, 2014, 1625-1631 Fulton Ave. Owner LLC brought a
third-party action in New York State court against Intrepid
alleging that Intrepid's negligence contributed to Cardona's
injuries and that Intrepid is obligated to indemnify 1625-1631
Fulton Ave. Owner LLC. Dkt. No. 63-7 ¶¶ 4, 7; Dkt. No. 66 ¶ 19.[2]

---

[2] At argument, counsel for Philadelphia explained that Intrepid is
"essentially the landlord" for Fulton.

The complaint in this third-party action did not mention sexual assault. Dkt. No. 63-7, at 3-5.

On June 25, 2014, Intrepid sent a letter to Philadelphia demanding coverage under the Insurance Policy for this third-party action. Dkt. No. 83-24; see Dkt. No. 83-2 ¶ 19.

On September 4, 2014, Philadelphia sent a letter to Intrepid titled "RESERVATION OF RIGHTS/PARTIAL DISCLAIMER," in which Philadelphia acknowledged receipt of Intrepid's demand and advised Intrepid of Philadelphia's coverage position. Dkt. No. 63-8, at 1; see Dkt. No. 66 ¶ 20. Philadelphia took the same position with respect to Intrepid that it took with respect to the City. Philadelphia reproduced the portion of the Insurance Policy that made Intrepid an Additional Insured and stated:

> Based on this endorsement, Intrepid qualifies for Additional Insured status under the [Commercial General Liability] Part of the [Insurance Policy] only.

Dkt. No. 63-8, at 3. Philadelphia then reproduced the Abuse or Molestation Exclusion and stated:

> [Philadelphia] reserves its rights to disclaim coverage to Intrepid under the Abuse or Molestation [E]xclusion.

Id. at 4. Philadelphia also reproduced the SPAM Coverage Form and stated:

> Intrepid is not entitled to Named Insured or [A]dditional [I]nsured status under the SPAM Coverage Form of the [Insurance Policy]. Accordingly, [Philadelphia]

disclaims coverage to Intrepid under the SPAM Coverage Form.

[Philadelphia] will provide Intrepid with a defense in the Third-Part action under the [Commercial General Liability] Part of the [Insurance Policy] only. Without waiving any of its rights or defense under the [Insurance Policy], [Philadelphia] hereby assigns Rutherford & Christie to defend Intrepid in the Third-Party action on a going forward basis only.

By agreeing to be defended by counsel appointed by [Philadelphia], Intrepid consents to the assignment of counsel by [Philadelphia] and acknowledges that neither [Philadelphia] nor any related company waives or intends to waive any defense to coverage under the policy.

[Philadelphia] reserves the right to assert other terms, conditions, and provisions of the policy, and to amend and supplement this letter with respect to the captioned lawsuit at any time in the future. None of the acts of [Philadelphia's] agents, attorneys or employees are to be construed as a waiver or operate as an estoppel with respect to any of [Philadelphia's] rights under the [Insurance Policy].

Id. at 8; see Dkt. No. 66 ¶ 20.

On May 5, 2015, Philadelphia received a letter from Intrepid's appointed counsel stating that discovery had uncovered that the assault Cardona alleged caused his injuries was sexual in nature. Dkt. No. 83-29; see Dkt. No. 66 ¶ 2; Dkt. No. 83-2 ¶¶ 30-31.

On July 1, 2015, Cardona filed a verified bill of particulars in his action against the City, Aguila, and others

specifying that he alleged his injuries were caused by sexual assault. Dkt. No. 83-30; see Dkt. No. 83-2 ¶ 32. Intrepid's appointed counsel forwarded the bill of particulars to Philadelphia on July 14, 2015. Dkt. No. 83-31; see Dkt. No. 83-2 ¶¶ 35-36.

On October 22, 2015, the third-party action against Intrepid was dismissed, and Intrepid was added as a defendant in Cardona's state court action. Dkt. No. 83-32; see Dkt. No. 83-2 ¶ 37.

### c.

On October 11, 2016, Philadelphia filed this declaratory judgment action against the City, Intrepid, and Cardona. Philadelphia seeks a declaration that it is not obligated to defend or indemnify the City or Intrepid in Cardona's lawsuit because the Abuse or Molestation Exclusion applies to Cardona's allegations of sexual assault. Dkt. No. 1. Intrepid has filed a counterclaim seeking a declaration that Philadelphia is obligated to defend and indemnify Intrepid in Cardona's lawsuit. Dkt. No. 19.

There are three formal motions pending in this case. Philadelphia has filed a motion for summary judgment. Dkt. No. 61. The City has filed a motion to dismiss. Dkt. No. 67. And Intrepid has filed a cross-motion for summary judgment. Dkt. No. 82. The City has also requested that the Court enter summary

judgment in its favor even though it has not formally moved for summary judgment. Dkt. No. 70, at 5-8. Philadelphia responded in its reply papers to the City's request for summary judgment. Dkt. No. 75, at 1-3. Out of an abundance of caution, the Court issued Orders on January 24 and 27, 2018, informing Philadelphia that the Court would consider City's request and inviting Philadelphia to submit any further arguments or evidence in response. Dkt. Nos. 98, 100. On February 12, 2018, Philadelphia filed a short brief in response to the Court's Orders. Dkt. Nos. 101, 102.

## II.

The standard for granting summary judgment is well established.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994). The moving party bears the initial

burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts which are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994)). If the moving party meets its burden, the burden shifts to the non-moving party to bring forward "specific facts showing a genuine issue for trial." Ovesen v. Mitsubishi Heavy Indus, of Am., Inc., No. 04cv2849, 2012 WL 677953, at *1 (S.D.N.Y. Mar. 1, 2012). The non-moving party must produce evidence in the record and "may not rely simply on

conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see Ovesen, 2012 WL 677953, at *1. If there are cross-motions for summary judgment, a court must assess each of the motions and determine whether either party is entitled to judgment as a matter of law. See Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993); see also Gen. Ins. Co. of Am. v. Starr Indemn. & Liab. Co., No. 14-cv-7354, 2016 WL 4120635, at *4 (S.D.N.Y. July 22, 2016).

Rule 56(f)(1) of the Federal Rules of Civil Procedure permits a court to grant summary judgment in favor of a non-movant so long as the party against whom judgment is entered has been provided with notice and a reasonable time to respond. Fed. R. Civ. P. 56(f)(1); see Celotex Corp., 477 U.S. at 326. Before granting summary judgment in favor of a non-moving party, the court must assure itself "that the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried." Priestly v. Headminder, Inc., 647 F.3d 497, 504 (2d Cir. 2011) (per curiam) (quoting Schwan-Stabilo Cosmetics GmbH & Co. v. Pacificlink Int'l Corp., 401 F.3d 28, 33 (2d Cir. 2005)). Philadelphia has had ample notice that the Court will consider the City's request for summary judgment, and

Philadelphia has had the opportunity to oppose that request and demonstrate any factual issues that preclude summary judgment for the City.

### III.

Intrepid and the City argue that the New York Insurance Law obligates Philadelphia to defend and indemnify them in Cardona's lawsuit because Philadelphia failed to disclaim coverage for Cardona's lawsuit in a timely fashion.[3]

### A.

Section 3420(d)(2) of the New York Insurance Law requires an insurer to inform an insured and others of any denial of coverage "based on a policy exclusion without which the claim would be covered." <u>Worcester Ins. Co. v. Bettenhauser</u>, 734 N.E.2d 745, 747 (N.Y. 2000).

Section 3420(d)(2) provides:

> If under a liability policy issued or delivered in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice <u>as soon as is reasonably possible</u> of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.

---

[3] The parties agree that New York law applies to this diversity action.

N.Y. Ins. Law § 3420(d)(2) (emphasis added).[4]

The New York State Legislature enacted section 3420(d)(2) "to 'aid injured parties' by encouraging the expeditious resolution of liability claims." KeySpan Gas E. Corp. v. Munich Reins. Am., Inc., 15 N.E.3d 1194, 1197 (N.Y. 2014) (quoting Allstate Ins. Co. v. Gross, 27 N.E.2d 736, 737 (N.Y. 1970)). "Compared to traditional common-law waiver and estoppel defenses, section 3420(d)(2) creates a heightened standard for disclaimer that 'depends merely on the passage of time rather than on the insurer's manifested intention to release a right as in waiver, or on prejudice to the insured as in estoppel.' " Id. at 1197-98 (quoting Allstate Ins. Co., 27 N.E.2d at 739).

"[T]imeliness of an insurer's disclaimer is measured from the point in time when the insurer first learns of the grounds for disclaimer of liability or denial of coverage." First Fin. Ins. Co. v. Jetco Contracting Corp., 801 N.E.2d 835, 838-39 (N.Y. 2003) (quoting Allcity Insurance Co. v. Jimenez, 581 N.E.2d 1342, 1343 (N.Y. 1991)). "[A]n insurer's explanation is insufficient as a matter of law where the basis for denying coverage was or should have been readily apparent before the onset of the delay." Id. at 839. "[W]here the grounds for disclaimer are not readily apparent, an insurer must be given

---

[4] The parties agree that section 3420(d)(2) applies to insurance coverage for Cardona's lawsuit in New York State court.

reasonable time to adequately investigate a claim in order to determine whether it wishes to disclaim coverage, but the insurer also has an obligation to engage in a reasonably prompt, thorough, and diligent investigation of the claim." U.S. Underwriters Ins. Co. v. City Club Hotel, LLC, 369 F.3d 102, 107 (2d Cir. 2004) (citations and internal quotation marks omitted).

To comply with section 3420(d)(2), any notice disclaiming coverage must be unequivocal, unambiguous, and properly served. U.S. Fid. & Guar. Co. v. Treadwell Corp., 58 F. Supp. 2d 77, 90 (S.D.N.Y. 1999) (citing Norfolk & Dedham Mut. Fire Ins. Co. v. Petrizzi, 503 N.Y.S.2d 51, 53 (1st Dep't 1986)). A reservation of rights letter is not a satisfactory notice of disclaimer under section 3420(d)(2). N.Y. Cent. Mut. Fire Ins. Co. v. Hildreth, 835 N.Y.S.2d 409, 413 (2d Dep't 2007). Indeed, "[a] reservation of rights letter has no relevance to the question whether the insurer has timely sent a notice of disclaimer of liability or denial of coverage." Hartford Ins. Co. v. Cnty. of Nassau, 389 N.E.2d 1061, 1062 (N.Y. 1979). At most, "[a] reservation of rights letter may be used to rebut a claim that the carrier waived the right to disclaim by defending its insured"; a reservation of rights notice is not itself a notice of disclaimer under section 3420(d)(2). N.Y. Cent. Mut. Fire Ins. Co., 835 N.Y.S.2d at 413.

"[M]ost often the question whether a notice of disclaimer has been sent 'as soon as is reasonably possible' will be a question of fact, dependent on all of the circumstances of a case that make it reasonable, or unreasonable, for an insurer to investigate coverage." First Fin. Ins. Co., 801 N.E.2d at 840 (quoting N.Y. Ins. Law § 3420(d)(2))). However, the New York Court of Appeals has on occasion approved awards of summary judgment against insurers for failure to comply with section 3420(d)(2). In Hartford Insurance Co. v. County of Nassau, the New York Court of Appeals affirmed an award of summary judgment in favor of the insured when the insurer waited sixty-two days to disclaim coverage and provided "[n]o explanation whatsoever" for the delay. 389 N.E.2d at 1062. Similarly, in First Financial Insurance Co. v. Jetco Contracting Corp., the New York Court of Appeals held that an unexplained, forty-eight-day delay before disclaiming coverage was unreasonable as a matter of law. 801 N.E.2d at 840.

## B.

Philadelphia failed as a matter of law to comply with section 3420(d)(2) with respect to both the City and Intrepid.

The analysis under section 3420(d)(2) ordinarily begins with determining the date on which the insurer first learned of the grounds for its disclaimer. See First Fin. Ins. Co., 801 N.E.2d at 838-39. The parties in this case hotly dispute when

Philadelphia knew that Cardona's lawsuit alleged sexual assault, and thus allegedly knew that it had grounds to invoke the Abuse or Molestation Exclusion.

The City and Intrepid assert that Philadelphia had sufficient knowledge that Cardona's suit alleged sexual assault on December 20, 2013, when the City tendered Cardona's verified complaint. Months prior to December, 2013, the City had tendered to Philadelphia Cardona's Notice of Claim, which alleged that Cardona's injuries were the result of sexual abuse. See First Fin. Ins. Co., 801 N.E.2d at 839. Relatedly, a jury could find that Philadelphia had sufficient knowledge on March 24, 2014, when it sent the "RESERVATION OF RIGHTS/PARTIAL DISCLAIMER" letter to the City. Philadelphia stated in that letter that Cardona's "Notice of Claim filed [w]as a condition precedent to the commencement of" his lawsuit against the City, and that the Notice of Claim "contains express allegations that [Cardona] was 'sexually assaulted.' " Dkt. No. 63-6, at 4.

Intrepid also asserts that Philadelphia had sufficient knowledge that Cardona's suit alleged sexual assault on September 4, 2014, when Philadelphia sent the "RESERVATION OF RIGHTS/PARTIAL DISCLAIMER" letter to Intrepid. Philadelphia acknowledged in that letter that the complaint underlying the third-part action against Intrepid "is based upon claims of sexual abuse." Dkt. No. 63-8, at 6. Intrepid further asserts

18

that Philadelphia had sufficient knowledge on May 5, 2015, when Intrepid's appointed counsel informed Philadelphia that their investigation revealed that Cardona's claims were based on sexual assault. At the latest, Intrepid asserts that Philadelphia had sufficient knowledge on July 14, 2015, when Intrepid's appointed counsel forwarded to Philadelphia a bill of particulars Cardona had filed stating that his legal claims arose from sexual abuse.

It is unnecessary to resolution of the pending motions for the Court to determine precisely when Philadelphia's duty to disclaim was triggered. Even assuming that Philadelphia's duty was triggered as late as July 14, 2015, no reasonable jury could conclude that Philadelphia satisfied section 3420(d)(2) because Philadelphia did not disclaim coverage in this case until it filed the present declaratory judgment action fifteen months later, on October 11, 2016. See Generali-U.S. Branch v. Rothschild, 744 N.Y.S.2d 159, 161 (1st Dep't 2002) (holding that a declaratory judgment action qualifies as a disclaimer under section 3420(d)(2)).

Philadelphia argues that the letter it sent to the City on March 24, 2014, and the letter it sent to Intrepid on September 4, 2014, were sufficient disclaimers of coverage under section 3420(d)(2). Philadelphia asserts that these letters satisfied section 3420(d)(2) because (1) they expressly disclaim coverage

under the Insurance Policy, even though they contain reservation
of rights language and (2) they drew the attention of the City
and Intrepid to the Abuse or Molestation Exclusion by
reproducing the relevant policy language. Neither argument is
persuasive.

Philadelphia's letters did not expressly disclaim coverage
under the Insurance Policy. Neither letter states unequivocally
that Philadelphia denied Commercial and General Liability
insurance coverage pursuant to the Abuse or Molestation
Exclusion for Cardona's lawsuits. See U.S. Fid. & Guar. Co., 58
F. Supp. 2d at 90. In fact, both letters stated that
Philadelphia would provide a defense to the City and Intrepid
for Cardona's lawsuit under the Commercial and General Liability
provision of the Insurance Policy. The letters stated only that
Philadelphia "reserves its rights to disclaim coverage . . .
under the Abuse or Molestation [E]xclusion." Dkt. No. 63-6, at
4; Dkt. No. 63-8, at 4. Such a reservation of rights does not
qualify as an express disclaimer under section 3420(d)(2). See
Hartford Ins. Co., 389 N.E.2d at 1062; N.Y. Cent. Mut. Fire Ins.
Co., 835 N.Y.S.2d at 413.[5]

---

[5] Philadelphia suggested at argument that any reservation of rights
letter would toll its obligation to disclaim under 3420(d)(2). As
noted above, New York law provides that a reservation of rights has no
effect on the timeliness of a section 3420(d)(2) disclosure. Hartford
Insurance Co., 389 N.E.2d at 1062.

The fact that Philadelphia reproduced the Abuse or Molestation Exclusion language in its letters to the City and Intrepid does not alone render the letters sufficient disclaimers. Philadelphia cites Raner v. Security Mutual Insurance Co., 958 N.Y.S.2d 342 (1st Dep't 2013), for the proposition that an insurer "satisfie[s] its duty to disclaim specifically by asserting the applicable policy sections on which it relied." Id. at 342 (citation omitted). Raner does not state that simply asserting applicable policy provisions without explicitly disclaiming coverage based on the provisions would be sufficient. New York law plainly requires an insurer to do more than just reproduce provisions of an insurance contract to state unambiguously that it denies coverage demanded by the insured. See U.S. Fid. & Guar. Co., 58 F. Supp. 2d at 90. Section 3420(d)(2) does not permit an insurer merely to reserve its rights to deny coverage or posit that the it could disclaim liability under the insurance contract -- an insurer must state that it "disclaim[s] liability or den[ies] coverage" in this case. N.Y. Ins. Law § 3420(d)(2); see Hartford Ins. Co., 389 N.E.2d at 1062. Philadelphia therefore only disclaimed liability under section 3420(d)(2) when it informed the City and Intrepid that it would invoke the Abuse or Molestation Exclusion in Cardona's case. That did not happen until Philadelphia filed the declaratory judgment action in this Court -- about fifteen

months after it had unequivocal notice that the Cardona lawsuit was based on sexual abuse.

Philadelphia asserted for the first time at oral argument that its disclaimer of coverage for the Notice of Claim also operated as a disclaimer of coverage to the City for Cardona's lawsuit. This argument is inconsistent with Philadelphia's earlier position that "the allegations in the [c]omplaint, <u>not</u> the Notice of Claim, ultimately govern [its] coverage obligations" because the "Notice of Claim was superseded when an action was initiated and [Cardona's] [c]omplaint was filed" and "the [c]omplaint contained substantially <u>different</u> allegations than the prior Notice of Claim." Dkt. No. 59, at 2. This new argument is also inconsistent with Philadelphia's course of conduct. After the City tendered Cardona's complaint, Philadelphia issued the March 24, 2014, letter in which it reserved its rights to disclaim coverage rather than stating that the Notice of Claim disclaimer of coverage applied to the lawsuit. The only case Philadelphia cites in support of the new position it urged at argument -- <u>Pearson Capital Partners LLC v. James River Insurance Company</u>, 151 F. Supp. 3d 392 (S.D.N.Y. 2015) -- is completely irrelevant. No notice of claim was filed in <u>Pearson Capital Partners LLC</u> because the City was not a party to the lawsuit underlying that action. <u>Id.</u> at 398-99.

The remaining cases on which Philadelphia principally relies are distinguishable.

Philadelphia analogizes this case to QBE Insurance Corp. v. Jinx-Proof Inc., 6 N.E.3d 583 (N.Y. 2014). In that case, Jinx-Proof, a bar owner, demanded coverage from QBE for a lawsuit alleging claims of negligence, assault and battery, and a violation of the Dram Shop Act. Id. at 583. QBE replied to Jinx-Proof's demand with a letter stating that QBE would not indemnify or defend Jinx-Proof for the assault and battery claims and that Jinx-Proof did not have liquor liability coverage. Id. at 584. QBE later sent Jinx-Proof a second letter stating:

> [W]e are defending this matter under the Liquor Liability portion of the [commercial general liability] coverage, and under strict reservation of rights for allegations of Assault and Battery. Your policy excludes coverage for assault and battery claims . . . Therefore, should this matter proceed to verdict, any awards by the Court stemming from allegations of Assault and Battery will not be covered under your Commercial General Liability policy.

Id. at 584 (alterations in original). The New York Court of Appeals concluded that although QBE's letters "contained some contradictory and confusing language" regarding liquor liability coverage, the two letters taken together expressly disclaimed coverage under Jinx-Proof's policy for the assault and battery claims. Id. Here, in contrast, Philadelphia's letters never

expressly stated that it was disclaiming coverage for Cardona's sexual assault claims. Philadelphia's letters informed the City and Intrepid that it reserved its right to invoke the Abuse or Molestation Exclusion in the Insurance Policy; the letters did not state that Philadelphia was invoking that Exclusion with regard to Cardona's lawsuit.

Similarly, Philadelphia analogizes this case to Century Surety Co. v. Whispers Inn Lounge, Inc., No. 13-cv-9049, 2016 WL 590231 (S.D.N.Y. Feb. 10, 2016). In that case, Century Surety sent a letter to its insured stating that the circumstances of the case for which the insured sought coverage remained unclear but it was possible that an assault and battery exclusion to the insurance policy would apply. Id. at *3. Crucially, Century Surety's letter went on to state expressly: "To the extent the damages sought in the . . . complaint relate to an assault or battery, Century hereby disclaims all coverage." Id. (emphasis added). As discussed above, the letters Philadelphia sent to the City and Intrepid do not contain any such express disclaimer.

The record does not contain any evidence other than the March 24 and September 4, 2014, letters in which Philadelphia discussed denying coverage under the Abuse or Molestation Exclusion with the City or Intrepid. The next time that issue arose is when Philadelphia filed this lawsuit seeking a declaration that the Exclusion applies to Cardona's suit. The

parties agreed at oral argument that there was no further notice. Accordingly, Philadelphia did not disclaim coverage under the Abuse or Molestation Exclusion satisfactorily for purposes of section 3420(d)(2) until it commenced the instant lawsuit on October 11, 2016.

It follows that the City and Intrepid are entitled to summary judgment. About fifteen months elapsed between July, 2015, when Philadelphia learned that Cardona had filed a bill of particulars specifying that his claims arose from sexual abuse -- the latest possible date on which a reasonable jury could find that Philadelphia was aware of the grounds to invoke the Abuse or Molestation Exclusion -- and October, 2016.[6] Philadelphia has offered no explanation whatever for this delay. The New York Court of Appeals has made clear that such an extended and unexplained delay in disclaiming coverage is unreasonable as a matter of law. See First Fin. Ins. Co., 801 N.E.2d at 840 (holding that an unexplained forty-eight-day delay

[6] Philadelphia asserted for the first time at oral argument that in July, 2015, it did not have sufficient information about the nature of Cardona's claims to decide whether to disclaim under the Abuse or Molestation Exclusion. This argument is in significant tension with Philadelphia's earlier argument that it was able to and did in good faith disclaim coverage under the Abuse or Molestation Exclusion in the October 7, 2013, letter disclaiming coverage for the Notice of Claim, and the March 24, 2014, and September 4, 2014, letters discussed above. Moreover, Philadelphia has submitted no evidence of what information it newly discovered between July, 2015, and October, 2016, that caused it to file this lawsuit. Philadelphia's new argument therefore still fails to explain why it did not file this declaratory judgment suit in July, 2015, or within a reasonable time thereafter.

was unreasonable as a matter of law); Hartford Ins. Co., 389 N.E.2d at 1062 (holding that an unexplained sixty-two-day delay was unreasonable as a matter of law). Thus, no reasonable factfinder could conclude that Philadelphia complied with section 3420(d)(2) and therefore Philadelphia cannot invoke the Abuse or Molestation Exclusion against the City or Intrepid in Cardona's lawsuit.[7]

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, Intrepid's motion for summary judgment pursuant to Rule 56(a) and the City's request for summary judgment pursuant to Rule 56(f)(1) are **granted**; Philadelphia's motion for summary judgment is **denied**; and the City's motion to dismiss is **dismissed as moot**. The Clerk is directed to enter judgment against

---

[7] Philadelphia argues that it was bound by New York's so-called "four corners" rule to delay disclaiming coverage in this case until it completed its investigation into Cardona's claims. See Fitzpatrick v. Am. Honda Motor Co., 575 N.E.2d 90, 90 (N.Y. 1991) ("[A] liability insurer has a duty to defend its insured in a pending lawsuit if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered."). Philadelphia acknowledges that it completed its investigation of Cardona's legal claims by September 4, 2014, but it did not file this action for a declaratory judgment until two years later. See Dkt. No. 54, at 5-6. Nothing about the "four corners" rule precluded Philadelphia from defending the City and Intrepid in Cardona's state lawsuit and promptly filing a simultaneous action for a declaratory judgment as soon as it discovered that Cardona's lawsuit alleged injuries arising from sexual abuse.

Philadelphia, to close all pending motions, and to close this case.[8]

**SO ORDERED.**

Dated:     New York, New York
           March 26, 2018

                                        John G. Koeltl
                                   United States District Judge

---

[8] The parties agree that Philadelphia has no independent claim against Cardona once summary judgment is awarded to the City and Intrepid.